UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEVALL | CIVIL ACTION |
| VERSUS | NO: 14-1381 |
| HAMMOND MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD ET AL. | SECTION: "J"(1) |

## ORDER AND REASONS

Before the Court are Defendants the Hammond Municipal Fire and Police Civil Service Board (CSB or the Board) and David Danel (Danel)'s ***Motion to Dismiss Complaint and Request for Injunctive and/or Declaratory Relief or, in the Alternative, to Stay*** **(Rec. Doc. 18)**, Plaintiff Roddy Devall's opposition thereto (Rec. Doc. 31), and the CSB and Danel's reply (Rec. Doc. 45), as well as Defendants the City of Hammond and Mayor Mason Foster (Mayor Foster)'s ***Motion to Dismiss, or in the Alternative, to Stay the Case*** **(Rec. Doc. 26)**, Plaintiff's opposition thereto (Rec. Doc. 32), Defendants' Reply (Rec. Doc. 36), and Plaintiff's Sur-reply (Rec. Doc. 40). Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This dispute derives from the Hammond Municipal Fire and Police Civil Service Board's investigation of complaints filed against Plaintiff. On April 25, 2014, an officer with the Hammond Police Department (HPD) was arrested on various drug charges. (Rec. Doc. 1, p. 2) Shortly thereafter, the HPD issued a press release containing booking information in connection with the officer's arrest. Id. at 3. The HPD routinely releases arrestees' booking information to the press in compliance with Louisiana Code of Criminal Procedure Article 228,[1] and as Chief of the HPD, Plaintiff is responsible for such compliance. Id. However, a provision of the Louisiana Police Officers' Bill of Rights prohibits any person, agency, or department from "releas[ing] to

_____

[1] Louisiana Code of Criminal Procedure Article 228 states in relevant part:

A. It is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked.

B. A person is booked by an entry, in a book kept for that purpose, showing his name and address, a list of any property taken from him, the date and time of booking, and the submission of a booking information summary as provided for in Paragraph C of this Article to the person making the entry in the police or jail book. Every jail and police station shall keep a book for the listing of the above information as to each prisoner received. *The book and booking information summaries shall always be open for public inspection.* The person booked shall be imprisoned unless he is released on bail.

Id. (emphasis added). Plaintiff alleges that to comply with this requirement that booking information be available for public inspection, "the HBD issues and/or provides local media/newspapers with the booking information regarding arrestees and/or, press releases containing information required [under the Article]." (Rec. Doc. 1, p.3)

the news media . . . a law enforcement officer's home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the law enforcement officer." LA. REV. STAT. ANN. § 40:2532. Dispute therefore arises as to whether it was appropriate to release the officer's booking information. (Rec. Doc. 18-1, p. 2) Consequently, the officer arrestee and her ex-husband, who is also a police officer, filed complaints alleging that the HPD violated Louisiana Revised Statute Section 40:2532. (Rec. Doc. 18-3, pp. 1-2, 18-22) The ex-husband's complaint specifically mentions Plaintiff and Hammond City Police Public Information Officer Lieutenant Vince Giannobile (Giannobile). Id. at 21-22.

On May 15, 2014, the Board held a meeting at which it discussed the complaints and decided to initiate an investigation of the allegations.[2] (Rec. Docs. 1, 18-1) The Board voted to issue several orders (1) placing Plaintiff on administrative leave with pay, (2) mandating the surrender of Plaintiff's City-

---

[2] The Board is required to investigate such complaints. In relevant part, Louisiana Revised Statute Section 33:2477 provides that the Board shall:

> Conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension or dismissal of the officer or employee, in accordance with the provisions of this Part. Investigations conducted pursuant to the provisions of this Paragraph shall be completed within sixty days.

Id.

issued vehicle for the duration of the administrative leave, (3) prohibiting Plaintiff from having contact with any employees of the City of Hammond, and (4) requiring Plaintiff to collect and remove his personal effects from his office at HPD. (Rec. Docs. 1, 18-1) Additionally, the Board retained a private firm, Personnel Management, Inc., to assist in the investigation of the allegations contained in the complaints. (Rec. Doc. 18-1, p. 3) Finally, the Board issued written notice of the investigation to Plaintiff and Giannobile, attaching copies of the complaints. Id. Upon receiving notice, Plaintiff on May 16, 2014, requested that the Board suspend his questioning for thirty days to permit him to secure counsel pursuant to Louisiana Revised Statute Section 40:2531(B)(4)(b).[3] Id.

The Board conducted its interrogation of Giannobile on May 22, 2014. Id. Giannobile told the Board that he had released the officer's information to the press in accordance with Plaintiff's orders. Id. Consequently, Giannobile's counsel argued that Plaintiff instructed Giannobile to commit an act that would result in discipline to Giannobile, all in violation of Louisiana

---

[3] This section of the Louisiana Revised Statutes sets forth the minimum standards for any investigation of a police employee or law enforcement officer. Specifically, Louisiana Revised Statute Section 40:2531(B)(4)(b) states, "The police employee or law enforcement officer shall be granted up to thirty days to secure [counsel], during which time all questioning shall be suspended."

Revised Statute Section 33:2505(4).[4] Id. Giannobile's counsel requested at the meeting that the Board investigate Plaintiff's alleged violation of the provision and submitted a written complaint featuring the same request and allegations one week later. Id. Counsel for the officer whose information was released similarly submitted a written complaint to the Board seeking disciplinary action of Plaintiff for this additional alleged violation. Id. at 4.

After securing counsel but before submitting to the Board's interrogation, Plaintiff filed his Complaint and Request for Injunctive and Declaratory Relief in the U.S. District Court for the Eastern District of Louisiana against the Board; David Danel, individually and in his capacity as Chairman of the Board; the City of Hammond; and Mayson Foster, individually and in his official capacity as Mayor of the City of Hammond. Plaintiff alleged therein that Defendants violated his "due process [rights] under the 14th Amendment, his rights of free speech and association under the 1st Amendment, his rights under the Law Enforcement Officers' Bill of Rights . . ., and that the actions were in retaliation for [P]laintiff's oppositions to unlawful actions taken by [Defendants]." (Rec. Doc. 31, pp. 1-2) Plaintiff

---

[4] Louisiana Revised Statute Section 33:2505(4) prohibits any person from "[r]equir[ing] any employee in the classified service to perform an act, or neglect an act, which would be a reason for dismissal or disciplinary action of the employee."

subsequently sought a temporary restraining order to enjoin Defendants' allegedly unlawful behavior. (Rec. Doc. 6) After a telephone hearing, this Court granted the motion, vacating the decisions by the Board that placed Plaintiff on paid administrative leave and prohibited him from having any contact with any employees of the City of Hammond. (Rec. Doc. 8) Additionally, the Court enjoined Defendants from taking any adverse employment action against Plaintiff without conducting a hearing and affording Plaintiff a right to be heard. Id. However, the Court did not prohibit Defendants from conducting a lawful investigation of the complaints lodged against Plaintiff. Id. Finally, the Order required Plaintiff to appear for questioning in connection with the ongoing investigation of the complaint against him on June 20, 2014. Id.

Plaintiff, accompanied by his attorney, appeared for questioning on June 20, 2014.[5] (Rec. Doc. 11-7, p. 3; Rec. Doc. 17, p. 6) There, Plaintiff had the opportunity to explain his side of the story. (Rec. Doc. 18-1, p. 6) In total, the Board and

---

[5] Plaintiff had been scheduled to appear and give testimony on Monday, June 16, 2014, but Plaintiff failed to appear. (Rec. Doc. 18-1, p. 5) On Friday, June 13, 2014, Plaintiff's counsel requested to reschedule the interview. Id. However, the Board advised Plaintiff that a continuance would not be possible because of the sixty-day time limit for investigations of written complaints mandated by Louisiana Revised Statute 40:2531(B)(7). Id. Nevertheless, Plaintiff refused to appear, electing to file a Motion for Temporary Restraining Order with this Court instead. Id.

Personnel Management, Inc. obtained sworn statements from eighteen witnesses as well as a number of documents. Id. The Board accepted Personnel Management, Inc.'s evidence at a June 23, 2014, meeting. Id.

On June 30, 2014, the Board conducted a hearing at which Plaintiff's attorney appeared and commented on the investigation.[6] (Rec. Doc. 11-7, p. 4; Rec. Doc. 17, pp. 8-10) During the hearing, the Board concluded that there was enough evidence to warrant commencing the pre-disciplinary process. (Rec. Doc. 17, pp. 9-10) Consequently, the Board instructed the Appointing Authority to conduct a pre-disciplinary hearing at which Plaintiff would have the opportunity to be heard and that would serve the purpose of creating a record for any appeal. (Rec. Doc. 17, p. 10) The Appointing Authority therefore issued a pre-disciplinary notice to Plaintiff on the evening of June 30, 2014, and served the notice on Plaintiff on July 1, 2014.[7] Id.

On July 7, 2014, Plaintiff filed a Motion for Contempt of the Temporary Restraining Order. (Rec. Doc. 11) As a result of this motion, the Appointing Authority postponed the pre-disciplinary hearing, which had been scheduled for July 14,

---

[6] The Board had notified Plaintiff's and Giannobile's attorneys of the meeting. (Rec. Doc. 18-1, p. 6)
[7] Defendant the City of Hammond attempted to serve Plaintiff with the pre-disciplinary notice on June 30, 2014, but was not able to do so. (Rec. Doc. 20, p. 2)

2014.[8] (Rec. Doc. 20, pp. 2-3) In the motion, Plaintiff argued that the Board and Danel violated the Temporary Restraining Order by (1) engaging in an adverse employment action without providing Plaintiff with notice and an opportunity to be heard; (2) conducting an investigation despite a lack of statutory authority; (3) denying Plaintiff a forum for appeal; (4) failing to provide adequate notice of the June 30, 2014, hearing; (5) failing to comply with the 60-day limit for investigations; (6) participating in the investigation in violation of Due Process; (7) violating Louisiana's Open Meetings Law; and (8) employing evidence gathered before the Court issued the Temporary Restraining Order. Id. Plaintiff did not argue that Defendants Mayor Foster or the City of Hammond violated the Temporary Restraining Order. The Court denied the motion, finding that Defendants had not engaged in an adverse employment action or otherwise violated the terms of the Order. (Rec. Doc. 30)

Defendants Board and Danel filed a *Motion to Dismiss Complaint and Request for Injunctive and/or Declaratory Relief*

---

[8] Defendants the City of Hammond and Mayor Foster sought Plaintiff's consent to the postponement, but Plaintiff objected. (Rec. Doc. 20, p. 3) Nevertheless, the Appointing Authority postponed the hearing and confirmed the postponement with Plaintiff's counsel. Id. "[T]he Appointing Authority believed that a postponement of the pre-disciplinary hearing would protect [Plaintiff's] rights, considering [Plaintiff's] verbal and written protest and objections as to the manner and methods of the civil service proceedings." Id. The hearing had not been rescheduled as of September 2, 2014. See (Rec. Doc. 32, p. 14)

*or, in the Alternative, to Stay* on August 1, 2014. (Rec. Doc. 18) Defendants the City of Hammond and Mayson Foster similarly filed a *Motion to Dismiss, or in the Alternative, to Stay the Case.* (Rec. Doc. 26) Plaintiff opposed both motions. (Rec. Docs. 31, 32) Defendants filed replies (Rec. Doc. 36, 45), and Plaintiff filed a sur-reply to Defendant City of Hammond and Danel's reply. (Rec. Doc. 40)

**LEGAL STANDARD**

**I. 12(b)(1) Motion to Dismiss for Lack of Jurisdiction**

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir.2001). Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." <u>Id.</u> (citing <u>Hitt v. City of Pasadena</u>, 561 F.2d 606, 608 (5th Cir.1977)). Lack of subject matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. <u>Ramming</u>, 281 F.3d

9

at 161. During this inquiry, "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005). Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." See Ramming, 281 F.3d at 161. The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

## II. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is

10

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

**DISCUSSION**

**I. Subject Matter Jurisdiction**

    **A. Younger Doctrine**

Defendants Board and Danel argue that Plaintiff's suit satisfies each of the prerequisites for application of the Younger abstention doctrine. (Rec. Doc. 18-1, pp. 10-11) First, they argue that the state-court proceedings are ongoing. Id. at 11. Second, they stress that "the State of Louisiana has an important interest in having its state court judgments and orders enforced." Id. Third, the state forum presents an adequate opportunity for Plaintiff to raise his constitutional challenges.

Id. Defendants the City of Hammond and Mayor Foster generally offer the same arguments, but they specify that it is Plaintiff's claims for injunctive or declaratory relief that are precluded by Younger. (Rec. Doc. 26-1, pp. 7-8)

Plaintiff insists that application of the Younger abstention doctrine would be inappropriate in this case. (Rec. Docs. 31, 32) Plaintiff stresses that Younger does not apply to claims for monetary relief. (Rec. Doc. 31, p. 8) Further, Plaintiff argues that Younger should not apply to his claims for injunctive or declaratory relief because there is no state court proceeding currently pending, and Plaintiff's constitutional claims are not cognizable in the ongoing administrative proceeding. Id. at 7-8. Thus, Younger does not bar this Court from considering Plaintiff's complaint.

The Younger abstention doctrine generally constrains the ability of federal courts to interfere with parallel, pending state proceedings. It is based upon "a proper respect for state functions . . . and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger v. Harris, 401 U.S. 37, 44 (1971). Federal courts initially invoked the doctrine to avoid interfering with state criminal proceedings, but have since

extended the doctrine to apply to civil proceedings. Additionally, "Younger abstention can be applied to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings, the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." La. Debating & Literary Ass'n v. City of New Orleans, 42 F.3d 1483, 1490 (5th Cir. 1995). As the United States Supreme Court has stressed, however, "Circumstances fitting within the Younger doctrine . . . are 'exceptional'; they include . . . 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). To determine whether to apply the doctrine, courts examine "(1) whether the state proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." La. Debating & Literary Ass'n, 42 F.3d at 1490 (internal quotation marks and citations omitted). Where such exceptional circumstances are lacking, the general rule that "the pendency of an action in state court is no bar to proceedings

13

concerning the same matter in the Federal court having jurisdiction" applies. Id. (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Finally, the Younger doctrine does not apply to suits seeking monetary rather than equitable relief. Alexander v. Ieyoub, 62 F.3d 709, 713 (5th Cir. 1995).

As an initial matter, the Court finds that the underlying state proceedings here fall within the exceptional circumstances capable of triggering Younger abstention. See Sprint Commc'ns, Inc., 134 S. Ct. at 592. In response to a complaint, the state actor and federal defendant initiated an investigation of the federal plaintiff to determine whether disciplinary action might be necessary. See id. The Court therefore concludes that the Board's investigation is a civil enforcement proceeding of the kind to which Younger has been extended. Id.

Next, the Court applies a three-part test to determine whether Younger applies. The first factor—whether there is an ongoing state judicial proceeding—derives from the fact that "[w]hen no state proceedings are pending, a federal action does not interfere with or insult state processes and the policies on which the Younger doctrine is premised have little force . . . ." La. Debating & Literary Ass'n, 42 F.3d at 1490 (internal quotation marks omitted). Additionally, the ongoing state

14

proceeding must be judicial in nature. <u>New Orleans Pub. Serv.,</u> <u>Inc.</u>, 491 U.S. at 367-70 (stating that even if "the litigation, from agency through courts, is to be viewed as a unitary process [in which federal courts should abstain from intervening] the [agency] proceeding [must] be the sort of proceeding entitled to <u>Younger</u> treatment"(emphasis omitted)). "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." <u>Id.</u> at 370 (quoting <u>Prentis v. Atlantic Coast Line Co.</u>, 211 U.S. 210, 226 (1908)). Here, the Court finds—as the Supreme Court has twice presumed without deciding—that "an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for <u>Younger</u> purposes." <u>Sprint Commc'ns,</u> <u>Inc.</u>, 134 S. Ct. at 592 (citing <u>New Orleans Pub. Serv., Inc. v.</u> <u>Council of New Orleans</u>, 491 U.S. 350, 367-70 (1989)). Thus, the current administrative proceedings, which are appealable to state court, constitute an ongoing state proceeding. The Court further finds that the state proceedings at issue here are judicial in nature because the Board and the Appointing Authority are investigating and potentially imposing discipline based on past facts under laws already in existence. <u>See</u> <u>New Orleans Pub.</u> <u>Serv., Inc.</u>, 491 U.S. at 367-70. The Court therefore concludes that the ongoing proceedings before the Board and the Appointing

Authority constitute an "ongoing state judicial proceeding" in satisfaction of the first factor.

Second, the Court must examine whether the state action implicates important state interests. When courts examine whether the implicated state interest is sufficient to warrant <u>Younger</u> abstention, they "do not look narrowly to its interest in the <i>outcome</i> of the particular case." <u>New Orleans Pub. Serv., Inc.</u>, 491 U.S. at 365. Rather, they examine "the importance of the generic proceedings to the [s]tate." <u>Id.</u> This consideration has led courts to expand <u>Younger</u> abstention from cases implicating the states' interest in enforcing their criminal laws to those regarding, for example, obscenity regulation, contempt proceedings, welfare fraud actions, child abuse regulations, and antidiscrimination laws. <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 30 n.2 (1987)(Stevens, J., concurring). "Further, when the proceedings implicate a 'function[] traditionally associated with the police powers of the States,' the state's interest is generally sufficient for purposes of <u>Younger</u>." <u>Merlin Transport, Inc. v. Denton</u>, No. 3:11-cv-365-M, 2011 WL 3510737, at *7 (N.D. Tex. Aug. 9, 2011)(quoting <u>New Orleans Pub. Serv., Inc.</u>, 491 U.S. at 365). Here, the Court is asked to enjoin a state proceeding examining police conduct. The primary provision that Plaintiff is accused of violating was created for the safety of the state's

16

law enforcement officers, which the Court concludes implicates Louisiana's police power over health and safety. The Court therefore finds that the second prong is satisfied.

Third, the Court determines whether the state proceedings provide the federal plaintiff with an adequate opportunity to raise constitutional challenges. Viewing the administrative and state court proceedings as a unitary process, it is clear that the state proceedings provide Plaintiff with an opportunity to raise his constitutional challenges to Defendants' actions. See, e.g., Landry v. Baton Rouge Police Dept., 2008-2289, p. 8 (La. App. 1 Cir. 5/8/09); 17 So. 3d 991, 996-97 (examining constitutional implications of retroactive application of statutory amendments in appeal from municipal fire and police civil service board's decision); Middleton v. City of Natchitoches, 2006-1531, pp. 10-12 (La. App. 3 Cir. 4/4/07); 954 So. 2d 356, 363-64. The Court therefore concludes that the three criteria for the application of Younger abstention are present here. Having concluded that Plaintiff's claims for injunctive and declaratory relief must be dismissed, the Court will now examine the remainder of Defendants' motions to dismiss for lack of jurisdiction and for failure to state a claim in relation to Plaintiff's claims for monetary relief.

17

**B. Rooker-Feldman Doctrine**

Defendants Board and Danel argue that Plaintiff's suit is "an impermissible collateral attack on a state entity's ruling" that is barred by the Rooker-Feldman doctrine and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). (Rec. Doc. 18-1, p. 8) Defendants reason that this Court's lack of jurisdiction under Rooker-Feldman to review state courts' final judgments in judicial proceedings extends to prohibit review of judicial acts by state agencies, such as the Board. (Rec. Doc. 18-1, p. 9)(citing Scott v. Flowers, 910 F.2d 201, 206 (5th Cir. 1990)). Thus, Plaintiff's complaint, which effectively asks this Court to nullify the actions of the Board, is barred by the Rooker-Feldman doctrine, and this Court lacks jurisdiction to consider it.

Defendants the City of Hammond and Mayor Foster similarly argue that the Rooker-Feldman doctrine applies, and therefore, this Court lacks subject matter jurisdiction to hear Plaintiff's complaint. (Rec. Doc. 26-1, p. 6) They add that the United States Fifth Circuit Court of Appeals extended the Rooker-Feldman doctrine "to deprive the federal district courts of jurisdiction over the claims of individuals who are aggrieved by the judicial acts of state agencies controlled by state courts and who *deliberately bypass available channels of state court review*."

18

Id. (quoting Thomas v. Kadish, 748 F.2d 276 (5th Cir. 1984))(emphasis added). They assert that the Board "carries out judicial acts, such as holding hearings, issuing written findings, reconsidering its rulings, awarding attorneys' fees, administering oaths, subpoenaing witnesses, and compelling production of documents." Id. (citing La. Rev. Stat. §§ 33:2477, 33:2501, 33:2501.1, 33:2502). Additionally, a party aggrieved by a decision of the Board may appeal such decision to state courts. Id. (citing La. Rev. Stat. § 33:2501(E)). Therefore, here, where Plaintiff has declined to appeal the Board's decision and, instead, elected to pursue the instant lawsuit, this Court lacks jurisdiction.

Plaintiff counters that the Rooker-Feldman doctrine only applies to "state-court losers" who seek review of the adverse state-court judgment in federal district court. (Rec. Docs. 31, 32) Plaintiff stresses that he seeks review not of a judgment but of the procedures employed in reaching it. Id. at 3-4. Plaintiff further argues that the Rooker-Feldman doctrine does *not* apply to "suits lodged in district court to seek review of a state agency action," relying on a footnote in Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 644 (2002). Plaintiff asserts that the cases Defendants rely upon to show that the doctrine extends to actions by state agencies are merely special

exceptions for review of bar admission decisions, over which state courts exercise particularly close control. (Rec. Doc. 40, pp. 3-5)  Finally, Plaintiff maintains that this case does not present any of the "four major characteristics common to applications of this doctrine" because Plaintiff is not a "state-court loser," Plaintiff's injuries do not arise from a state-court judgment, no state-court judgment issued before initiation of the instant federal action, and Plaintiff does not seek review of a state judgment. As such, Plaintiff insists that the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply.

    The <u>Rooker</u>-<u>Feldman</u> doctrine prohibits federal district courts from considering complaints seeking review of state-court judgments. <u>See</u> <u>United States v. Shepherd</u>, 23 F.3d 923, 924 (5th Cir. 1994)(citing <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415 (1923)). The doctrine evinces the rule that "federal district courts lack jurisdiction to entertain collateral attacks on state judgments." <u>Id.</u> Courts have extended the rule to prevent federal district courts from reviewing "the judicial acts of state agencies controlled by state courts," particularly where the federal complainant "bypass[ed] available channels of state court review." <u>Scott v. Flowers</u>, 910 F.2d 201, 206 (5th Cir. 1990). Additionally, "[a] federal complainant

cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief." Shepherd, 23 F.3d at 924. Even where the federal complainant does not seek review of a state judgment, but rather "issues that are 'inextricably intertwined'" with it, a federal district court lacks original jurisdiction. Id.

This Court concludes that the Rooker-Feldman doctrine does not apply to Plaintiff's claims for monetary relief. In determining whether to apply Rooker-Feldman to this administrative determination, the Court examines "whether [the Board's decision] was a judicial act, whether [the Board] is the agent of the state courts, and finally, whether [Plaintiff] intentionally refrained from seeking state court review of the [Board's] decision." Scott, 910 F.2d at 206. First, here, it is clear that the Board's investigation is judicial in nature. "[A] proceeding is judicial when it 'investigate[s], declare[s], and enforce[s] liabilities . . . on present or past facts and under laws supposed already to exist.'" Id. at 208. The Board's investigation of complaints against Plaintiff certainly meets this standard. See id. Second, the Board is not an agent of Louisiana state courts and cannot be said to be "controlled" by state courts. The Board is a statutorily-created municipal entity

operating under statutorily-created procedures whose members are appointed by the Appointing Authority, the "governing body of the municipality." LA. REV. STAT. § 33:2476; see also Scott, 910 F.2d at 208 (finding that a constitutionally established state commission whose members were not substantially selected by the judiciary was not an agent of the courts). Finally, the Court notes that Plaintiff has not appealed the Board's orders despite having the ability to do so. See LA. REV. STAT. § 33:2501(E). However, the Court does not believe the Board's actions to be sufficiently controlled by the state judiciary to implicate the Rooker-Feldman doctrine. See Sims v. Barbour, No. 3:09CV84 DPJ-JCS, 2009 WL 3841709, at * (S.D. Miss. Nov. 16, 2009)(finding Rooker-Feldman to be inapplicable where the state proceedings were insufficiently controlled by the state courts).

### C. Colorado River Doctrine

Defendants CSB and Danel further argue,[9] "to the extent that the other abstention doctrines apply, this Court should exercise its discretion by applying the Colorado River abstention doctrine." (Rec. Doc. 18-1, p. 12) Because the pending state proceedings and the instant federal suit are between the same

---

[9] Defendants City of Hammond and Mayor Foster do not argue in their motion that Colorado River abstention applies.

parties and involve the same issues, Defendants assert that the Colorado River doctrine applies here. Id.

Plaintiff insists that the Colorado River doctrine is appropriate only under extraordinary circumstances not present here. Plaintiff states that courts review six factors to determine whether Colorado River abstention is appropriate. The factors weigh against abstention in this case. First, the instant case does not involve any res or property over which the state or federal court has taken control. Second, because the state and federal fora are closely situated, the factor which considers the convenience of the geographic fora does not weigh in favor of abstention. Third, maintaining the federal action would not result in piecemeal litigation leading to inconsistent rulings with respect to a piece of property. Fourth, looking to the relative progression of the state and federal actions rather than the date of filing, it is clear that abstention is not warranted because the state action is at a standstill. Fifth, Plaintiff's claim is based on federal law, which renders abstention inappropriate. Sixth, although Plaintiff disputes that there is a parallel state proceeding, even if there were, Plaintiff could not assert his constitutional claims before the CSB. Application

of <u>Colorado River</u> abstention in the instant case therefore would constitute an abuse of discretion.

Under the <u>Colorado River</u> doctrine, a federal court may only abstain under "exceptional circumstances." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976); <u>Brown v. Pacific Life Ins. Co.</u>, 462 F.3d 384, 394 (5th Cir.2006)(quoting <u>Kelly Inv. Inc. v. Cont'l Common Corp.</u>, 315 F.3d 494, 497 (5th Cir.2002)). There are six factors the court must balance on a case-by-case basis to determine whether exceptional circumstances warrant abstention: (1) assumption by either state or federal court over a res, (2) relative inconvenience of the fora, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent fora, (5) the extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. <u>Brown</u>, 462 F.3d at 395 (citations omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." <u>Moses H. Cone Mem. Hosp.</u>

24

v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)(emphasis added). So heavily, in fact, that any "neutral" factor must be considered as weighing against abstention and in favor of exercising federal jurisdiction. Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738-39 (5th Cir. 1999) (allowing neutral factors to weigh against abstention).

   Here, the factors weigh against abstention. First, neither this Court nor the state administrative proceedings have exercised jurisdiction over any res. The absence of this factor weighs against abstention. Id. at 738. Second, the state and federal fora are in relatively close proximity; Hammond and New Orleans are approximately one hour apart. Thus, "the inconvenience of the federal forum is [not] so great that abstention is warranted." Kelly Inv. Inc., 315 F.3d at 498 (internal quotation marks omitted); Trujillo v. Shivers, No. 12-1532, 2012 WL 4892929, at *2 (E.D. La. Oct. 15, 2012)("The Court's inquiry with respect to this factor is whether the inconvenience of the federal forum is so great that abstention is warranted, not whether the state forum is more convenient. When the federal and state courts are in approximately the same geographic location within the state, this factor weighs against abstention."(internal citations and quotation marks omitted)).

Third, because the third factor is concerned not with duplicative litigation, but with "the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property," it does not weigh in favor of abstention. Trujillo, 2012 WL 4892929, at *2. As mentioned above, neither proceeding has exercised jurisdiction over a res. Fourth, because neither the state nor the federal proceedings have made much progress on the merits of the case and the suits are proceeding at approximately the same pace, this factor weighs against abstention. Id. at 3. Fifth, Plaintiff raises several issues of federal law in his federal suit. That the case also presents issues of state law does not make abstention appropriate; "the presence of state law issues weighs in favor of surrender only in rare circumstances." Id. (quoting Black Sea Inv., Inc. v. United Heritage Corp., 204 F.3d 647, 651 (5th Cir. 2000)). This factor therefore does not weigh in favor of abstention. Lastly, although the state proceedings as a whole allow Plaintiff to assert his constitutional claims, this factor is neutral. See Trujillo, 2012 WL 4892929, at *3-4. Because not a single factor weighs in favor of abstention, the Court finds that Colorado River abstention is unwarranted in this case.

26

**D. Ripeness**

Defendants City of Hammond and Mayor Foster argue that Plaintiff's claims against them are not ripe. (Rec. Doc. 26-1, pp. 3-6) City of Hammond and Mayor Foster contend that Plaintiff's claims are not ripe because the administrative proceedings have not concluded. Id. at 4-5. Moreover, neither the City of Hammond nor Mayor Foster "has held a hearing or issued any orders pertaining to Plaintiff's employment status." Id. at 5. City of Hammond and Mayor Foster stress that Plaintiff actually alleges both that Mayor Foster has taken no action in relation to Plaintiff *and* that the City of Hammond has offered no position on the Board's allegations. Id. at 5-6. Thus, Plaintiff has not alleged any actions on the part of the City of Hammond and Mayor Foster, so any claims against them are not ripe for adjudication. Id. at 6. This conclusion is bolstered by the fact that Plaintiff's Motion for Contempt of the Temporary Restraining Order (Rec. Doc. 10) was not filed against either the City of Hammond or Mayor Foster. Id.

Plaintiff maintains that his claims are ripe for review. (Rec. Doc. 32, p. 3) Plaintiff asserts that his claims are ripe because Mayor Foster, Plaintiff's appointing authority, placed Plaintiff on administrative leave at the direction of the Board.

27

Id. Additionally, Plaintiff contends that Mayor Foster enforced the Board's order by "directing Plaintiff to comply with subpoenas issued in connection with the 'investigation.'" Id. Specifically, Mayor Foster ordered Plaintiff to provide the information that the Board sought with a request for public information in connection with the complaints against Plaintiff. (Rec. Doc. 32-1, p. 13)

The Fifth Circuit states the standard for examining whether a case is ripe for adjudication in New Orleans Public Service, Inc. v. Council of New Orleans, 833 F.2d 583 (5th Cir. 1987):

> A court should dismiss a case for lack "ripeness" when the case is abstract or hypothetical. The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

Id. at 586-87 (internal citations omitted).

As an initial matter, the Court disagrees with the City of Hammond and Mayor Foster's general assertion that Plaintiff's claims are not ripe because the administrative proceedings are ongoing. The cases that Defendants cite in support of such a conclusion are clearly distinguishable. In Kastner v. Tex. Bd. of Law Exam'rs, 278 Fed. App'x 346, 348-49 (5th Cir. 2008), the

28

court found that the plaintiff's federal suit was not ripe when the plaintiff challenged the rejection of his bar application before his application was actually rejected. Id. Similarly, in McFadden v. Stephens, 253 F.3d 702 (5th Cir. 2001), the court held that the plaintiff's suit was not ripe for adjudication when the plaintiff complained of an injury he would suffer *if* the state's medical board undertook disciplinary proceedings against him. Here, Plaintiff does not merely complain of an adverse state finding before its rendering. Rather, Plaintiff, for example, alleges a First Amendment retaliation claim based upon Defendants' decision to investigate the complaint against him. (Rec. Doc. 1, p. 10) Such a complaint is not contingent upon the outcome of the state proceedings and, thus, is not unripe because the state proceedings are incomplete. Lastly, in Monk v. Huston, 340 F.3d 279, 282-83 (5th Cir. 2003), the court found that the plaintiffs' procedural due process claims based upon the state environmental agency's hypothetical granting of a permit were not ripe because further factual development was required before the court could adjudicate the issue. Specifically, the court could not address the due process claim unless there had been a deprivation, which the plaintiffs had not yet suffered and would not suffer unless the state agency issued the permit in question.

Here, however, Plaintiff's due process claims stemming from the CSB's decision to place Plaintiff on administrative leave or order the surrender of Plaintiff's government-issued vehicle need no further factual development. The mere fact that the administrative proceedings are ongoing does not prevent Plaintiff's federal action from being ripe for adjudication in this case.

The issue of whether Plaintiff's claims against Defendants City of Hammond and Mayor Foster are ripe when Plaintiff clearly alleged in his complaint that they have done nothing presents a closer question. Although Plaintiff in his opposition alleges that Mayor Foster placed him on administrative leave, Plaintiff's complaint challenges the *Board's order* placing him on administrative leave *specifically because* only the Appointing Authority, Mayor Foster, had the authority to do so. (Rec. Doc. 1, p. 7) Even if the Court were to consider the email chain that Plaintiff submits in an attempt to show that Mayor Foster acted with the Board, it does not seem that Mayor Foster's limited participation in the investigation–his email ordering Plaintiff to provide the Board with the documents they requested to complete their investigation–makes Mayor Foster responsible for

the alleged wrongs committed by Defendants Board and Danel.[10] See (Rec. Doc. 32-1, pp. 13-16). Further, Plaintiff's opposition does not even assert that the City of Hammond has taken any action. Ultimately, however, the Court finds that the questions that Plaintiff's complaint presents are "purely legal ones" that need no "further factual development." See New Orleans Pub. Serv., Inc., 833 F.2d at 587. It may be that Plaintiff has failed to state a claim against the City of Hammond and Mayor Foster, but Plaintiff's claims for monetary, injunctive, and declaratory relief are not unripe.

## II. Failure to State a Claim

### A. Defendants City of Hammond and Mayor Foster

Defendants City of Hammond and Mayor Foster argue that Plaintiff has failed to state a claim against them because Plaintiff does not allege that they have taken any action in his complaint. Plaintiff disagrees, arguing in his opposition that Defendants City of Hammond and Mayor Foster "ordered Plaintiff to

---

[10] The Court generally agrees with Defendants, however, that it may not consider the email chain and other documents Plaintiff submitted with his oppositions (Rec. Docs. 31, 32) without converting the instant motions to motions for summary judgment. See Maloney Gaming Mgmt, L.L.C. v. St. Tammany Parish, 456 Fed. Appx. 336, 340-41 (5th Cir. 2011). These documents are neither referenced in the complaint nor attached to Defendants' motions to dismiss. Although Plaintiff seems to suggest they are central to his claims when he argues that they show Mayor Foster participated in the Board's actions that violated his rights, the Court is not convinced that the documents support such an inference. Mayor Foster merely ordered Plaintiff to produce documents so that the Board could conduct its investigation. Thus, the Court will not consider the documents, but also believes that the documents would not alter its conclusions.

produce information to Defendants, Board and Danel, [and] countenanced the administrative leave and gag order." (Rec. Doc. 32, p. 6) The Court agrees with Defendants City of Hammond and Mayor Foster, however, that Plaintiff has failed to allege any facts in support of the claims he makes against them. In fact, Plaintiff went so far as to state in his complaint that these parties have "taken no action" or that they did not "join in, refute, or take any affirmative position" in relation to Defendant Board's investigation. (Rec. Doc. 1, p. 7) Plaintiff has failed to state a claim against Defendants City of Hammond and Mayor Foster, and the Court grants their motion to dismiss for failure to state a claim on all claims against them.

**B. Defendants Board and Danel**

**1. Louisiana Open Meetings Law Violation[11]**

Defendants Board and Danel argue that Plaintiff failed to state a claim for violation of the Louisiana Open Meetings Law (LOML), Louisiana Revised Statute 42:11, et seq. (Rec. Doc. 18-1,

---

[11] "Any person who has been denied any right conferred by the provisions of [the LOML] or who has reason to believe that the provisions of [the LOML] have been violated may institute enforcement proceedings." LA. REV. STAT. § 42:25. Upon finding a violation of the LOML in such an enforcement proceeding, a Court may award "any or all of the following forms of relief": a writ of mandamus, injunctive relief, declaratory judgment, judgment rendering the action void as provided in Louisiana Revised Statute Section 42:24, judgment awarding civil penalties as provided in Louisiana Revised Statute Section 42:28. LA. REV. STAT. § 42:26. Thus, because Plaintiff may institute an action against Defendants for violations of the LOML and seek a form of monetary relief, the Court considers this claim here despite its dismissal of all claims for injunctive or declaratory relief.

p. 13) "Plaintiff alleges that Defendants violated the [LOML] by failing to note on the agenda that Plaintiff was the subject of either the May 15, 2014, meeting or the executive session conducted on that date and by secretly meeting before the May 15, 2014, meeting to pre-decide and vote on what actions Defendants were going to take against Plaintiff." Id. They argue that Plaintiff's claims are erroneous for several reasons. Id. Louisiana Revised Statute 42:14(A) notes that all meetings of public bodies must be open to the public "unless closed pursuant to R.S. 42:16, 17, or 18." Louisiana Revised Statute 42:16 permits public bodies to hold executive sessions, which are closed to the public, upon the vote of two-thirds of the board at an open meeting for which notice has been given pursuant to Louisiana Revised Statute 42:19. Notice sufficient under Louisiana Revised Statute 42:19 must include "the agenda, date, time, and place of the meeting," and notice must list each agenda item separately and with reasonable specificity. The board may hold executive sessions under Louisiana Revised Statute 42:16 to address the topics listed in Louisiana Revised Statute 42:17, including "[i]nvestigative proceedings regarding allegations of misconduct." LA. REV. STAT. § 42:17(A)(4). Here, the Board listed on the agenda for the May 15, 2014, meeting that the "Board

[would] consider a request for investigation submitted on behalf of [the officer by her attorney]" and separately listed an item for the request that the officer's ex-husband submitted. Id. at 14. Additionally, the agenda stated that the Board would "enter into Executive Session to investigate certain allegations of alleged misconduct and related matters." Id. at 15. Although the Board and Danel did not identify Plaintiff as the subject of the complaints and executive session, Louisiana Revised Statute 42:19 only requires the agenda to disclose the identity of the parties when the CSB will discuss pending or prospective litigation "for which formal written demand has been made."  La. Rev. Stat. § 42:19(A)(1)(b)(iii)(aa), (bb). Finally, the Board and Danel assert that they did not predecide the action to be taken at the meeting. The Board and Danel therefore conclude that the Board was authorized to hold an executive session concerning the allegations against Plaintiff, and that the executive session complied with all requirements.

Plaintiff counter argues that the Board and Danel's arguments "are not proper fodder for adjudication of a 12(b)(6) motion." Plaintiff stresses that he has stated a claim for relief arising from Defendants' violations of the LOML. (Rec. Doc. 31, p. 12)

The Court agrees with Plaintiff that Defendants Board and Danel's arguments are not properly addressed in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Taking all of Plaintiff's well-pleaded facts as true, as this Court is bound to do, Plaintiff sufficiently pleaded his claim. The Court therefore denies Defendants Board and Danel's motion to dismiss for failure to state a claim with respect to this claim.

**2. Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, Plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." <u>Mills v. City of Shreveport</u>, No. 13-2670, 2014 WL 4924909, at * (W.D. La. Sept. 30, 2014)(Hicks, J.). Plaintiff alleges violations of various federal rights, which the Court will address in turn.[12]

---

[12] The Court notes that in order for municipal liability to attach under Section 1983, a plaintiff must prove "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." <u>Piotrowski v. City of Hous.</u>, 237 F.3d 567, 578 (5th Cir. 2001). Because municipal liability under Section 1983 cannot be predicated on respondeat superior, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." <u>Id.</u> (internal footnote omitted). Defendants' motion seeks to defeat Plaintiff's Section 1983 claims by arguing immunity and that Plaintiff has not stated a claim for a constitutional violation. Thus, the Court will not discuss the elements for municipal liability any further.

**a. Procedural and Substantive Due Process Violations**

*i. Surrender of the City-Issued Vehicle*

Defendants CSB and Danel assert that Plaintiff fails to state a claim for violation of his substantive and procedural due process rights for the forced surrender of his city-issued vehicle because Plaintiff does not have a property interest in his employer-issued vehicle. (Rec. Doc. 18-1, p. 16) Plaintiff's city-issued vehicle "[was] to be used only for the purposes of providing public services and carrying out job responsibilities." Id. at 16. Defendants therefore argue that the city, not Plaintiff, has a property interest in Plaintiff's city-issued vehicle. Absent a property interest in the city-issued vehicle, Plaintiff cannot state a claim for violation of his substantive or procedural due process rights. Defendants City of Hammond and Mayor Foster do not address Plaintiff's claims relating to the city-issued vehicle. Plaintiff responds by arguing that even if he has no right to the government benefit, Defendant public officials may not deny him the benefit "on a basis that infringes his constitutionally protected interests–especially, his interest in freedom of speech." (Rec. Doc. 31, p. 13)

Plaintiff's due process rights–whether procedural or substantive–are implicated only if (1) a state actor (2) deprived

36

him (3) of a protected property interest. <u>See</u> <u>Tex. Faculty Ass'n v. Univ. of Tex.</u>, 946 F.2d 379, 383 (5th Cir.1991). If these requirements are met, then such deprivation may not occur without due process. <u>Id.</u> Defendants CSB and Danel do not dispute that they are state actors who deprived Plaintiff of the city-issued vehicle. They argue, however, that Plaintiff lacks a protected property interest in the vehicle.

"State law controls the analysis of whether plaintiff has a property interest sufficient to entitle [him] to due process protection." <u>Swift v. Siesel</u>, No. CIV.A. 01-2691, 2002 WL 1585617, at *4 (E.D. La. July 15, 2002)(citing <u>McDonald v. City of Corinth</u>, 102 F.3d 152, 155 (5th Cir.1996)).

> [T]o establish either a substantive or a procedural due process violation by claiming denial of a property right, [plaintiff] must first establish a denial of a constitutionally protected property right.... Such a showing ... must be made by reference to state law. "The Constitution does not create property interests; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." '

<u>Bryan v. City of Madison</u>, 213 F.3d 267, 274-75 (5th Cir. 2000) (quoting <u>Schaper v. City of Huntsville</u>, 813 F.2d 709, 713 (5th Cir. 1987) (quoting <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972))). "Property rights may also be created by 'mutually

explicit understandings or tacit agreements,' such as contracts, that 'support a legitimate claim of entitlement under an independent source such as state law.'" <u>Swift</u>, 2002 WL 1585617, at *4 (quoting <u>Regents of Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 223 n. 9 (1985)).

Plaintiff does not have a property interest in the city-issued vehicle.[13] His work vehicle was and is city-owned, and he was authorized to use the vehicle only for work purposes. (Rec. Doc. 18-1, pp. 16-17) Further, as explained by Defendants CSB and Danel, Plaintiff was required to return the vehicle to a department facility during the pendency of his administrative leave. (Rec. Doc. 45, p. 5) The Court therefore concludes that Plaintiff has failed to state a claim under Section 1983 arising from a procedural or substantive due process violation as a result of the forced surrender of the city-issued vehicle. Alternatively, as to Defendants City of Hammond and Mayor Foster, the Court finds that Plaintiff has failed to allege facts sufficient to state a Section 1983 claim against them for deprivation of the city-issued vehicle.

_____

[13] Plaintiff relies upon <u>Perry v. Sindermann</u>, 408 U.S. 593 (1972) in stating that even if he lacks a protected property interest, Defendants could not deprive him of the vehicle for a reason that violates his constitutional rights. Specifically, Defendants could not deprive him of the vehicle because Plaintiff exercised his First Amendment rights. This may be so, but it does not cure his failure to state a claim for a due process violation.

*ii. Placement on Paid Administrative Leave*

All Defendants argue that Plaintiff has failed to show that Defendants violated his due process rights by placing him on paid administrative leave because it is well established in the Fifth Circuit that "[p]lacement on paid administrative leave does not constitute deprivation of a property interest." (quoting <u>Davis v. Dallas Indep. Sch. Dist.</u>, 448 F. App'x 485, 495 (5th Cir. 2011)). Defendants City of Hammond and Mayor Foster further argue that Plaintiff has failed to show that they were involved with his placement on administrative leave, and therefore, that Plaintiff has failed to state a claim against them. (Rec. Doc. 26-1, pp. 12-13) Plaintiff again counter argues that Defendants may not deprive him of the benefit on a basis that violates his constitutional rights. (Rec. Doc. 31, p. 13)

The Court finds that Defendants did not deprive Plaintiff of a protected property interest when they placed him on paid administrative leave. As Defendants explained, "Placement on paid administrative leave does not constitute deprivation of a property interest." <u>Davis</u>, 448 F. App'x at 495. Plaintiff has therefore failed to state a Section 1983 claim for the violation of his due process rights in relation to being placed on administrative leave. Alternatively, as above, Plaintiff failed

39

to allege facts sufficient to state a Section 1983 claim against Defendants City of Hammond and Danel for placement on administrative leave.

Having concluded that Defendants did not deprive Plaintiff of a protected property interest, the Court need not address Plaintiff's complaints relating to the allegedly insufficient procedures. That is, the Court will not discuss the alleged lack of notice of the May 15, 2014, meeting and forum for appeal.

**b. First Amendment Retaliation**

Defendants argue that Plaintiff's First Amendment retaliation claims fail because he cannot make a *prima facie* case for retaliation under either federal or Louisiana law. (Rec. Doc. 18-1, pp. 19-20) To do so, Plaintiff must show that he suffered an adverse employment action. Id. at 20. Defendants argue that "the act of investigating possible employee misconduct is not an adverse employment action." Id. (citing Kuhn v. Washtenaw Cnty., 709 F.3d 612, 625 (6th Cir. 2013)). They further argue that Plaintiff has not shown that the complained-of action was undertaken by the final decisionmaker. (Rec. Doc. 45, p. 7) Moreover, Defendants were required by state law to conduct the investigation upon receiving the complaints. (Rec. Doc. 18-1, p.

20) Plaintiff therefore cannot show that Defendants' actions were taken in retaliation. Id.

Plaintiff argues that he has stated a claim for retaliation. (Rec. Doc. 31, pp. 18-20) Plaintiff explains that for the purposes of a Section 1983 claim, adverse employment actions are not limited to formal procedures. Id. at 19. Thus, informal actions such as those taken by Defendants–denying Plaintiff emoluments of office and placing him on paid administrative leave–qualify. Id. He further asserts that his speech, which was related to official misconduct, is of great public concern. Id. Plaintiff sufficiently pleaded his retaliation claim by alleging that "because of his access to the judicial system within his First Amendment rights, Defendants engaged in acts of retaliation culminating in the 'investigatory' proceeding before Defendant Board." Id. at 19-20.

The Court finds that Plaintiff has stated a claim for First Amendment retaliation against Defendants CSB and Danel. "To establish a retaliation claim [in the First Amendment context, a plaintiff] must prove the following elements: (1) the plaintiff suffered an adverse employment decision; (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's

41

interest in promoting efficiency, and (4) a causal link existed between the protected activity and the adverse employment action." <u>Juarez v. Aguilar</u>, 666 F.3d 325, 332 (5th Cir. 2011). Although Defendants Board and Danel argue that Plaintiff cannot meet this burden because an investigation does not constitute an adverse employment decision, Defendants did more than investigate Plaintiff. Because Defendants do not even address all of Plaintiff's allegations related to his First Amendment Retaliation claim, the Court denies their motion with respect to this claim.

### c. Other First Amendment Claims

Defendants contend that Plaintiff has failed to state a claim for violation of his First Amendment rights because Plaintiff has not shown that Defendants restricted his ability to speak on matters of public concern. (Rec. Doc. 18-1, pp. 20-22) Defendants "issued a narrowly tailored order, which only prohibited Plaintiff from contacting City employees until the [close of its] investigation." <u>Id.</u> at 22. Further, Plaintiff "failed to allege that his interest in speaking outweighs the CSB's interest in restricting his speech." <u>Id.</u> Defendants City of Hammond and Mayor Foster also argue that Plaintiff failed to state a claim against them for violation of his First Amendment

42

rights because Plaintiff failed to allege that they took any action related to the Board's order. (Rec. Doc. 26-1, p. 15)

Plaintiff argues that the "gag order" placed on Plaintiff during the Board's investigation, which prohibited him from contacting or speaking with City of Hammond employees, violated his First Amendment rights. (Rec. Doc. 31, pp. 17-18) The restriction was not specific to any topic of speech, but rather banned Plaintiff from having any communication with City employees. Id. Thus, Plaintiff argues that the ban constituted an impermissibly broad prior restraint on Plaintiffs speech. Id.

The Court cannot condone Defendants' suggestion that a prohibition on speech is lawful when it bans all speech with certain individuals and therefore prevents the affected party from proving that it specifically targets public speech. Defendants CSB and Danel's motion is denied as to this claim.

### d. Qualified Immunity

Defendant Danel asserts that he is entitled to qualified immunity from Plaintiff's Section 1983 claims.[14] (Rec. Doc. 18-1, pp. 22-23) First, Danel argues that Plaintiff has failed to show that he violated his clearly established constitutional rights.

---

[14] The Court does not address whether Mayor Foster is entitled to qualified immunity because the Court previously granted in full Mayor Foster's motion to dismiss for failure to state a claim.

43

(Rec. Doc. 18-1, p. 23) Defendant Danel also contends that even
if he had violated Plaintiff's constitutional rights, his
behavior was objectively reasonable.[15] (Rec. Doc. 18-1, p. 23)

Plaintiff counter argues that he has alleged violations of
his clearly established First Amendment and Due Process rights.
As such, Plaintiff maintains that Defendant Danel is not entitled
to qualified immunity in relation to his Section 1983 claims.

The defense of qualified immunity is available to state
actors sued under Section 1983. Hunter v. Town of Edwards, 871 F.
Supp. 2d 558, 562 (S.D. Miss. May 16, 2012). This defense,
however, "only applies to claims alleged against officials in
their individual, but not their official capacities." Id. Courts
engage in a two-step inquiry to determine whether the defense is
available to officials sued in their individual capacity. Id.

> First, the Court must determine whether the plaintiff
> has alleged a violation of constitutional or statutory
> rights. If such violation is alleged, the Court next

---

[15] Defendants CSB and Danel further argue that Danel is entitled to the
same defenses as the CSB in relation to Plaintiff's claims against Danel in his
official capacity. (Rec. Doc. 18-1, p. 24) They argue that because a claim
against an officer in his or her official capacity is essentially the same as one
against that officer's governmental agency, the claims against Danel and the
claims against CSB essentially merge. Id. Thus, because the claims against CSB
have no merit, the claims against Danel must fail as well. Id.

The Court is not persuaded. Although a claim against an officer in his
official capacity is essentially a claim against his governmental agency, a
plaintiff may still assert claims against the official and the agency for actions
undertaken by one or both of them. Those claims will then succeed or fail
individually on their own merit.

considers 'whether the allegedly violated
constitutional rights were clearly established at the
time of the incident; and, if so, whether the conduct
of the defendants was objectively reasonable in the
light of that then clearly established law.'

Id. (citations omitted). When raised in a motion to dismiss, "it
is the defendant's conduct as alleged in the complaint that is
scrutinized for 'objective legal reasonableness.'" Behrens v.
Pelletier, 516 U.S. 299, 309 (1996)(emphasis omitted).

Plaintiff alleges violations of his First Amendment and Due
Process rights. The Court has already determined that Plaintiff
failed to state a Due Process claim, however, so the Court will
focus on the First Amendment issues here. As discussed above, the
Court concludes that Plaintiff sufficiently pleaded claims for
First Amendment Retaliation and other First Amendment violations.
Although Plaintiff states that "a prohibition against First
Amendment retaliation [and] gag orders" has been established for
decades (Rec. Doc. 31, p. 20), Plaintiff has not shown that it
was clearly established that Defendants' actions in the state
proceeding would violate those rights when Defendants engaged in
those acts. The Court similarly has not uncovered any such
precedent. Defendant Danel therefore is entitled to qualified
immunity in relation to Plaintiff's Section 1983 claims against
his in his individual capacity.

### e. Absolute Quasi-Judicial Immunity

In Defendant Board and Danel's reply, they argue that Danel is entitled to absolute immunity. (Rec. Doc. 43-1, p. 8) However, the defense of absolute quasi-judicial immunity is available to Danel in his individual capacity only. <u>Turner v. Houma Mun. Fire & Police Civil Serv. Bd.</u>, 229 F.3d 478, 485-86 (5th Cir. 2000); <u>Mills</u>, 2014 WL 4924909, at *7-8. Having previously concluded that Danel is immune from Plaintiff's claims against him in his individual capacity, the Court will discuss the issue of absolute quasi-judicial immunity no further.

### C. Availability of a Stay

Defendants argue that the Court should stay the instant litigation pending resolution of the state proceedings. They argue that such a stay "would prevent needless waste of time and resources for the parties, and possibly prevent inconsistent results at the state and federal court level." (Rec. Doc. 18-1, p. 25) Additionally, Plaintiff will not suffer prejudice as a result of a stay because Plaintiff can appeal any adverse decision to state court, which is a factor that courts should consider in determining whether to stay a case. <u>Id.</u>

Plaintiff maintains that it would be improper for the Court to stay the instant litigation. (Rec. Doc. 32, pp. 12-14) First, Plaintiff explains that there is no pending state court litigation, and a federal court "may not abandon cognizable jurisdiction to stay a case pending a state court proceeding that has not yet been initiated." Id. at 12. The availability of the state court neither mandates nor permits a stay here. Id. at 13. Further, the nature of the state court proceedings does not permit Plaintiff to assert his constitutional claims at this time; thus, Plaintiff would have to file a separate state court lawsuit to address those claims. Id. Finally, the avoidance of duplicative litigation is an insufficient reason to grant a stay; such duplicative litigation is the necessary result of maintaining the overlapping jurisdiction of state and federal courts. Id.

The Fifth Circuit has held that "Younger is not applicable to claims for damages." Boyd v. Farrin, 575 Fed. Appx. 517, 519-20 (5th Cir. 2014). When Younger applies, however, a district court may "stay the claims for damages pending the outcome of the state proceedings, such that they can move forward without interference." Id. (citing Deakins v. Monaghan, 484 U.S. 193, 202

(1988)). This Court therefore stays the action with respect to Plaintiff's remaining claims for damages.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss **(Rec. Docs. 18, 26)** are **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss for Lack of Jurisdiction **(Rec. Docs. 18, 26)** are **GRANTED** with respect to Plaintiff's claims for injunctive and declaratory relief. Plaintiff's claims for injunctive and declaratory relief are hereby **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Defendants City of Hammond and Mayor Foster's Motion to Dismiss for Failure to State a Claim **(Rec. Doc. 26)** is **GRANTED**. All of Plaintiff's claims against Defendants City of Hammond and Mayor Foster are hereby **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendants Board and Danel's Motion to Dismiss for Failure to State a Claim **(Rec. Doc. 18)** is **GRANTED IN PART**. The motion is **GRANTED** with respect to Plaintiff's claims for monetary damages based upon Substantive or Procedural Due Process. These claims are **DISMISSED with prejudice**. The motion is **DENIED** with respect to Plaintiff's

48

claims for violations of Louisiana's Open Meetings Law, First Amendment Retaliation, and First Amendment violations.

**IT IS FURTHER ORDERED** that Plaintiff's Section 1983 claims against Danel in his individual capacity are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendants Board and Danel's Motion to Stay **(Rec. Doc. 18)** is **GRANTED** with respect to Plaintiff's claims related to the Louisiana's Open Meetings Law, First Amendment Retaliation, and other First Amendment violations.

New Orleans, Louisiana, this 2nd day of December, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE